CORTÉS & SEGURA, INC., demandante y apelada, *v.* FERNANDO J. CORTÉS, demandado y apelante.

No. 4310.—*Sometido:* Mayo 9, 1929. *Resuelto:* Febrero 12, 1930.

*O. B. Frazer y R. Castro Fernández,* abogados del apelante; *F. Soto Gras,* abogado de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

El 5 de septiembre de 1922 Adolfo Valdés, Fernando J. Cortés y Enrique Segura constituyeron una corporación bajo el nombre de "Cortés y Segura, Inc.," para dedicarse a la compra y venta al por mayor y al detall de mercancías secas. Se fijó el capital en doscientos mil dólares divididos en dos

mil acciones y se comenzaron los negocios ingresando cuarenta mil, así: Valdés, $20,000; Cortés, $10,000, y Segura, $10,000. Segura se separó de la corporación recibiendo diez mil dólares en pago de sus acciones y a la fecha en que se originó este litigio el capital emitido y pagado de la corporación lo constituían 499 acciones de las cuales correspondían a Valdés 331, a Cortés 160, a Mariano R. Pesquera 4 y a Francisco J. Rodríguez 4.

En el año de 1925 continuaban desempeñando los cargos de presidente y tesorero-gerente las mismas personas que fueron elegidas desde el principio, esto es, Valdés, presidente, y Cortés, tesorero-gerente.

A fines de dicho año se acentuaron las diferencias de criterio entre el presidente y el tesorero-gerente debido a las pérdidas que se venían sufriendo en los negocios de la corporación y a que el presidente quería que se liquidara prontamente vendiendo las mercancías a bajo precio y el tesorero-gerente aunque se mostraba conforme con la liquidación de hecho la dilataba conservando los precios altos, esperando la llegada de los meses de diciembre y enero en que según él con motivo de las festividades de Pascuas, Año Nuevo y Reyes, podían venderse con mayores beneficios.

En ese estado las cosas, el presidente dirigió a Fernando J. Cortés una carta que copiada a la letra, dice:

"J. Ochoa y Hermano, San Juan, P. R.—San Juan Puerto Rico, diciembre 9 de 1925.—Sr. Don Fernando J. Cortés, San Juan, Puerto Rico.—Señor: Haciendo uso de las facultades y poderes inherentes al cargo que desempeño, y según ellos además se definen en el Reglamento de la corporación 'Cortés & Segura, Inc.,' por la presente destituyo a Ud. de su empleo de Gerente de dicha corporación, a partir desde esta fecha.

"En su virtud, cesará Ud. de ejercer las funciones de tal Gerente desde ahora, y entregará el establecimiento de dicha corporación, sito en la calle de San Justo número 21 de esta ciudad, a don Mariano R. Pesquera, mi representante personal, nombrado por la presente Gerente accidental, junto con los documentos, fondos y demás antecedentes que estén en poder de Ud., como tal Gerente.

"Esta decisión mía es motivada por actos de insubordinación suyos, perjudiciales a los intereses de la compañía, siendo ventajoso para la buena marcha y administración de los negocios corporativos que Ud. cese en el expresado empleo.–Atentamente, (fdo.) A. Valdés, Pte. Cortés & Segura Inc."

Cortés se negó a hacer la entrega que se le ordenaba y entonces, al día siguiente, 10 de diciembre de 1925, se inició este pleito. La demanda, en lo pertinente, expresa:

"Comparece la demandante, por conducto de su abogado que suscribe y como causa de acción alega:

"Que la demandante es una corporación organizada de acuerdo con las leyes de Puerto Rico.

"Que la demandante tiene su domicilio en la calle de San Justo No. 21 de esta ciudad, donde también tiene establecida una tienda de mercancías secas, conocida por 'El Mundo Elegante,' que es parte de los negocios de la corporación demandante.

"Que el demandado fué nombrado Gerente de la Corporación demandante y como tal tomó posesión del establecimiento expresado, con cuanto en él se contiene en mercaderías, libros de contabilidad, archivos, mobiliarios y demás útiles y enseres propios de esta clase de establecimientos, administrándolo en su carácter de Gerente expresado.

"Que la corporación demandante, por conducto de su Presidente, Don Adolfo Valdés Ordóñez, destituyó de su empleo de Gerente al demandado y le exigió la entrega del establecimiento relacionado, a lo cual se negó dicho demandado, insistiendo en retener, como retiene en la actualidad, posesión del mismo en contra de la voluntad y de las órdenes expresas de la Corporación demandante.

"Por tanto, a la Corte Suplicamos se sirva declarar con lugar esta demanda y dictar sentencia condenando al demandado a que entregue a la demandante la posesión del establecimiento mencionado en la demanda, con todo lo que es parte del mismo, y con las costas al demandado."

Y la contestación lee como sigue:

"1.—Que acepta los hechos alegados en los párrafos 1, 2 y 3 de la demanda en este caso.

"2.—De los hechos alegados en el párrafo cuarto y último de la demanda, niega que la corporación demandante haya destituído al demandado de su empleo de gerente y que le haya exigido la entrega del establecimiento relacionado en la demanda y que éste se

haya negado a dicha entrega y que en la fecha de la demanda retenía la posesión de la misma en contra de la voluntad y de las órdenes expresas de la corporación demandante.

"3.—Que el demandado fué nombrado y elegido director de la corporación demandante por unanimidad de la Junta de Accionistas de dicha corporación y nombrado Tesorero Gerente de la misma por unanimidad de la Junta de Directores de dicha corporación, desde su constitución, estando en la fecha de la demanda y en todos los tiempos antes mencionados en el ejercicio activo como tal Director y Tesorero Gerente.

"4.—Que el demandado es además accionista y posee acciones de dicha corporación por valor de $11,000 a la par.

"5.—Que en ninguna fecha desde la constitución de la corporación hasta y después de presentada la demanda en este caso se ha acordado por la Junta de Directores o por la Junta de Accionistas de dicha corporación la destitución del demandado ni tampoco se ha autorizado al Presidente de dicha corporación o a persona alguna para que presente este pleito o pleito alguno contra el demandado.

"6.—Que el Presidente de dicha corporación, Adolfo Valdés, sin el consentimiento de la Junta de Directores ni de la Junta de Accionistas de dicha corporación, sin poderes ni facultades algunas concedidas por los Artículos de Incorporación y Reglamento de dicha corporación, arbitrariamente y con el sólo y único objeto de perjudicar al demandado haciéndole perder todo el capital aportado a dicha corporación, y su reputación como comerciante, por su propia iniciativa, comunicó al demandado que quedaba destituído de su cargo como gerente de dicha corporación, poder y facultad que no le reconoció ni le reconoce el demandado.

"7.—Que el demandado es la única persona de acuerdo con el Reglamento de dicha corporación, que tiene derecho y tenía en todas las fechas antes mencionadas, a la posesión inmediata y control de los bienes de la referida corporación.

"8.—Que todo este procedimiento no es nada más que un ardid del Presidente de dicha corporación, Adolfo Valdés, para tomar posesión de una manera ilegal y arbitraria y sin el consentimiento de la corporación de todos los bienes de la misma para venderlos y disponer de ellos en la manera que él creyere conveniente, sin consultar a los demás accionistas y directores, con el objeto de hundir y disolver la corporación y como consecuencia hacer que las acciones del demandado no tuviesen valor alguno en el mercado.

"POR TANTO a la Hon. Corte suplica en su día declare sin lugar la demanda en este caso con imposición de costas."

Trabada así la contienda fué el pleito a juicio. Con la cposición del demandado se permitió a la demandante practicar una larga prueba en relación con las diferencias surgidas entre el presidente y el tesorero-gerente y con los negocios de la corporación, y aun con lo ocurrido después de archivada la demanda, y la corte, basándose en todo ello, dictó sentencia en contra del demandado. Este apeló señalando cuatro errores cometidos a su juicio, por la corte, 1°., al declarar con lugar la demanda; 2°., al admitir evidencia sobre hechos ccurridos después de su radicación; 3°., al admitir evidencia de hechos no alegados en ella, y 4°., al imponer las costas al demandado.

■■ La acción ejercitada es la que autorizan los artículos 170 y siguientes del Código de Enjuiciamiento Civil, debiendo en tal virtud demostrarse por la parte demandante: 1°., su dominio sobre los bienes reclamados, y 2°., la retención injusta de dichos bienes por el demandado.

No hay duda alguna que se probó el primer requisito. La corporación "Cortés & Segura, Inc.," era la única dueña del establecimiento y de las mercancías que es reclamaron en el pleito.

¿Se probó el segundo? Veámoslo.

Organizada la corporación se abrió su establecimiento "El Mundo Elegante," situado en la calle de San Justo No. 38, esquina a Fortaleza, de esta ciudad de San Juan, y al frente de él se encontraba cuando surgió el conflicto el demandado Cortés. ¿Con qué autoridad?

Las cláusulas de incorporación 8 y 9 de "Cortés & Segura Inc." dicen:

"OCTAVA:—Con excepción de los casos en que la ley o estas cláusulas dispongan lo contrario, las facultades y poderes, manejo y gobierno de la corporación lo ejercerá la Junta de Directores que se compondrá de los miembros que determinen los estatutos o reglamentos, serán accionistas *bona fide* de la corporación y ocuparán sus cargos por término de un año hasta la elección e instalación de sus sucesores. Cualquier director que dejare de ser accionista, cesará acto

seguido en el cargo de director. Las vacantes que ocurran por ausencia u otra causa en los cargos de directores se cubrirán para el resto del término por mayoría de votos de los otros directores restantes; tres directores constituirán *quorum* para la resolución de cualquier asunto que fuere convocada la junta de directores.

"Novena:—La Junta de Directores elegirá de su seno un Presidente, un Vice-Presidente, un Tesorero-Gerente y un Secretario de la Junta quienes serán a la vez Presidente, Vice-Presidente, Tesorero y Secretario de la corporación, tendrán las facultades y desempeñarán los deberes señalados por la ley y el reglamento de la corporación y percibirán la remuneración o salarios que la junta de accionistas les asigne por razón del desempeño de sus respectivos cargos.

El artículo 3, secciones 1 y 2 del Reglamento de dicha Corporación expresa:

"Artículo 3.—Junta de Directores.—Sección 1ª.—La dirección y administración de los negocios y bienes de la corporación estarán a cargo de la Junta de Directores que se compondrá, como máximum, de cinco directores, elegidos de entre los accionistas en la junta general anual, sus acuerdos serán válidos, siempre que sean adoptados por mayoría de votos de los presentes; tres directores reunidos constituirán *quorum*.

"Sección 2ª.—Los directores elegirán de entre ellos, el Presidente, Vice-Presidente, Tesorero-Gerente, y Secretario, verificándose esa designación en el mismo día en que fueren los directores elegidos por los accionistas."

Y el artículo 4, secciones 1, 2, 4 y 5 de dicho reglamento, prescribe:

"Artículo IV.—Oficiales Ejecutivos.—Sección 1ª.—El Presidente, el Vice-Presidente, el Tesorero-Gerente, el Secretario y los sustitutos o auxiliares de éstos que designen en casos necesarios, son los oficiales ejecutivos de la corporación, quienes serán elegidos en la primera junta de directores que se celebre después de la elección anual de todos los directores, y quienes ocuparán sus cargos y desempeñarán sus deberes por término de un año y hasta la elección e instalación de sus sucesores. Los directores discrecionalmente podrán nombrar y fijar la remuneración o sueldo de los demás oficiales, agentes y empleados que fueren necesarios.

"Sección 2ª.—El Presidente es el jefe ejecutivo y administrador general de la compañía. Presidirá las juntas generales y las de la

directiva, dirigiendo las discusiones y resolviendo. los incidentes que pudieran suscitarse conforme a la práctica y costumbre establecidas. Podrá suscribir todos los contratos, obligaciones y fianzas a nombre de la compañía y con el Tesorero-Gerente o quien le sustituya firmará los certificados de acciones que se libren a los accionistas. Preparará y presentará anualmente ante la última junta de directores que preceda a la general de accionistas una memoria o informe comprensivo de todas las operaciones y negocios del año anterior, cuya memoria o informe se podrá presentar ante la junta general de accionistas. Tendrá además todas aquellas atribuciones y deberes que la junta de directores acuerde asignarle o prescribir en beneficio de la corporación.

"Sección 4ª.—El Tesorero-Gerente tendrá la custodia de los fondos y valores de la corporación que le fueren confiados, depositándolos o guardándolos en los Bancos u otras instituciones que acordare la junta de directores y dispondrá de ellos a nombre de la corporación, mediante giro, endoso, cheque u otra forma de traspaso firmado por él o por el oficial o sustituto en sus funciones que la directiva autorice; recibirá y cobrará cuanto fuere debido o cobrable por o para la corporación. Tendrá y asumirá la gerencia y administración de los negocios conforme dispusiere la junta de directores; suscribirá y llevará la correspondencia comercial y estará a cargo de la contabilidad de la corporación con arreglo a las formalidades de la ley. Suscribirá con el Presidente o con el funcionario que designe la directiva las obligaciones con garantía, o sin ella que contrajera la compañía y los certificados de acciones que se emitan a los accionistas. Prestará fianza para el fiel desempeño de su cargo en la suma que le fije la junta de directores.

"Sección 5ª.—En casos de ausencia o impedimento del Tesorero-Gerente, la junta de directores designará a otro director como sustituto o interino con las mismas facultades y deberes del propietario.''

Una corporación es una persona jurídica diferente de las personas naturales de sus accionistas, directores y oficiales. Su funcionamiento constituye un ejemplo de un verdadero gobierno de ley. La ley en este caso la constituyen los preceptos aplicables promulgados por el legislador puertorriqueño y las cláusulas de incorporación y el reglamento adoptados por los propios interesados.

De conformidad con su ley, la dirección y administración

de los negocios y bienes de "Cortés y Segura, Inc." estaba a cargo de su junta de directores.

De entre esos directores debía elegirse y se eligió un presidente, Valdés, y un tesorero-gerente, Cortés, que asumieron los deberes de sus respectivos cargos.

Al tesorero-gerente correspondió "la gerencia y administración de los negocios conforme dispusiere la junta de directores." No hemos encontrado ningún acuerdo expreso de la junta en sus minutas pero la prueba aportada por la misma demandante revela que desde el principio hasta que surgió el conflicto el dicho tesorero-gerente fué el encargado de la dirección personal del establecimiento de la corporación "El Mundo Elegante" y por tanto que bajo su inmediata posesión y custodia quedaron y se encontraban los bienes existentes en el mismo.

No hay duda alguna que el presidente, "jefe ejecutivo y administrador general de la compañía," podía intervenir en la administración supervisando la del tesorero-gerente, pero para separar de la administración al tesorero-gerente, es para nosotros enteramente claro que no tenía por sí solo facultad. Si el conflicto surgió, debió someter su resolución a la junta de directores, que era la llamada, de acuerdo con la ley, a resolverlo. Y al no proceder de tal modo, estuvo justificado el demandado al negarse a rendir al presidente, por su único mandato, la autoridad que había recibido de la junta de directores.

Siendo esto así, es necesario concluir que al interponerse la demanda no existía causa de acción contra el demandado porque los bienes reclamados no se retenían por él injustamente.

La presentación de la demanda no fué autorizada por la junta de directores. La estableció el presidente, por su propio acuerdo, a nombre de la corporación.

Se insiste mucho por la parte apelada en que Cortés no fué destituído por el presidente Valdés de su cargo de tesorero, sino de su mero empleo de administrador sujeto a

sueldo, pero no es posible prescindir de lo expresamente estipulado y pactado en las cláusulas de incorporación y en el reglamento. A Cortés no se le entregó la dirección del establecimiento de la corporación como a un mero empleado sujeto a sueldo, sino en su carácter de tesorero-gerente de la misma.

En su opinión el juez sentenciador dice, en parte, así:

"Pero en este caso hay circunstancias especiales que resultan de los hechos probados, circunstancias extraordinarias que pueden calificarse de una verdadera emergencia y que necesitaban la intervención rápida con plena autoridad del Presidente, para evitar mayores males a la Corporación.

"Además, está probado, que el Presidente consultó con el único otro director que completaba el Board de Directores, junto con el demandado, no pudiéndose pretender que consultara con el demandado por ser éste la parte interesada y rebelde, y contra quien había que tomar rápidamente resoluciones por el estado de emergencia existente.

"Además, el Presidente Sr. Valdés era el mayor accionista de la Corporación.

"Llegamos a la conclusión de que el demandado fué bien destituído por el Presidente, de su cargo, pues los hechos probados demuestran una desobediencia del demandado a las órdenes del Presidente (Jefe Ejecutivo y administrador general de la Corporación), y además aparece probado que el empleo del demandado como administrador a sueldo, fué por un término de un año, que había expirado desde el día 9 de agosto de 1925, o sea con anterioridad a su destitución, la que tuvo efecto en diciembre 9 de 1925, según la carta de igual fecha (Exhibit C del demandante). No debe perderse de vista que el demandado Cortés fué destituído solamente de su empleo de administrador; pero no del cargo de tesorero de la Corporación."

Hemos examinado cuidadosamente la prueba y a nuestro juicio si bien demuestra que era difícil que los directores y oficiales continuaran unidos en la administración de los negocios, que éstos durante los meses últimos de 1925 se venían prolongando por Cortés con una pérdida cierta para la corporación, pues las ventas que se hacían no cubrían los gastos, y que se imponía una liquidación, nada concreto hemos encon-

trado en ella que revele algo indigno o fraudulento por parte de Cortés no obstante la fuerza y tenacidad con que fué investigado y atacado antes y durante el juicio. Al contrario, su actitud a los efectos de aguardar los meses de diciembre y enero para liquidar finalmente, parece lógica, y el resultado obtenido por la venta de las existencias en la liquidación le favorece.

A nuestro juicio no se probó caso de emergencia alguno, y en tal virtud, aunque se estimara aplicable la jurisprudencia que invoca la parte apelada, habría que concluir que no era aplicable aquí por falta de base suficiente para ello. El presidente no debió haberse limitado a consultar con el secretario de la corporación que no era director como exigen las cláusulas de incorporación, sino que debió haber reunido la junta de directores, dando oportunidad a Cortés para exponer en su seno las causas que tenía para actuar en la forma en que lo venía haciendo. La situación se hubiera discutido así y resuelto legalmente y se hubieran podido adoptar las medidas necesarias para la liquidación y disolución de la compañía de acuerdo con la ley. Si respetables eran los intereses de Valdés, igualmente lo eran los del demandado que además de su capital tenía envuelto todo su crédito en el asunto. La circunstancia de que el capital material invertido por Valdés fuera dos o tres veces mayor que el invertido por Cortés, en nada fundamentalmente varía la situación.

La corporación no era Valdés personalmente, ni era sólo su presidente, como no lo era tampoco Cortés personalmente, ni su tesorero-gerente. Era, como ya antes dijimos, una persona jurídica independiente constituída por todos sus accionistas y gobernada, de acuerdo con su ley, por su junta de directores. Esta y solamente ésta era la llamada a actuar. Lo que se hizo después pudo y debió haberse hecho antes y este pleito se hubiera evitado.

Se insiste por la parte apelada en que de todos modos la cuestión de si el presidente de la corporación tenía o no facultades para destituir al tesorero-gerente de su cargo de

gerente carece de importancia porque el acto del presidente fué debidamente ratificado por la junta de directores.

Para probar la ratificación se presentó evidencia de hechos ocurridos con posterioridad a la interposición de la demanda. Esta no fué enmendada para incluir dichos hechos. El demandado se opuso a la admisión de la prueba y cuando la corte la admitió tomó excepción y ahora como apelante sostiene que la corte sentenciadora erró al proceder de tal modo.

Creemos que tiene razón el apelante. Ya esta corte ha resuelto en *Martínez* v. *Porto Rico Railway Light & Power Company*, 20 D.P.R. 405 que

"No son admisibles como prueba documentos con respecto a hechos ocurridos con posterioridad a la radicación de la demanda, a menos que se enmiende la demanda haciendo alguna alegación que soporte tal prueba."

Pero aceptando que la prueba de la ratificación hubiera podido admitirse, creemos que todo lo que se hubiera demostrado hubiera sido que la junta general de accionistas de "Cortés & Segura, Inc." que debió celebrarse el 9 de agosto de 1925, lo fué el 2 de enero de 1926; que a ella concurrieron Adolfo Valdés representando 331 acciones, M. R. Pesquera 4 y F. J. Rodríguez 4; que faltó el otro accionista Cortés que había sido debidamente citado; que se hizo constar que siendo el capital emitido y pagado 499 acciones, estaban representadas más de las dos terceras partes del mismo y se procedió a la consideración de asuntos y toma de acuerdos adoptándose entre éstos uno por virtud del cual fué ratificada la actuación del Presidente en relación con la destitución de Cortés y liquidación de "El Mundo Elegante." ¿Cuál es el efecto de tal ratificación?

A nuestro juicio es claro que a partir del 2 de enero de 1926, quedó debidamente separado Cortés de su cargo de tesorero-gerente, pero la ratificación no puede convertir la actitud del demandado de justa en injusta. Cuando él se negó a rendir la administración y cuando la demanda se interpuso y la posesión de los bienes de la corporación fué

quitada al demandado, éste actuaba de acuerdo con la ley y en su consecuencia no retenía injustamente la posesión. Si bien había transcurrido el año de su nombramiento, como su sucesor no había sido elegido, continuaba como tal tesorero-gerente por disposición expresa de las cláusulas de incorporación. Cláusula 8ª., *supra.*

■ ''Generalmente hablando,'' se dice en 23 Ruling Case Law, pág. 934, ''en una acción de *replevin,* el derecho a la posesión de la propiedad al tiempo de comenzar el litigio es la sola materia en controversia y la única cuestión que puede ser juzgada y decidida en el mismo.'' Y luego agrega en la página que sigue: ''El peso de la prueba recae sobre el demandante en *replevin* para demostrar que al tiempo de iniciarse el pleito él era el dueño, que él tenía el derecho a la inmediata posesión de la propiedad y que el demandado la detentaba sin razón.''

Es cierto que la demanda aparece interpuesta por la corporación y que no hay duda alguna que la corporación era la dueña y la que tenía derecho a la posesión, pero la prueba demuestra que en el momento en que se interpuso el demandado actuaba a nombre de la corporación y a virtud de las facultades que ella misma le había conferido. Para alterar ese estado de hecho no bastaba la actuación del presidente bajo las circunstancias que aquí concurren. Se necesitaba la actuación de la propia corporación en la forma autorizada por la ley. Es indudable que los acuerdos tomados por la junta de 2 de enero de 1926 tienen gran importancia, pero no pueden destruir el derecho del demandado a actuar como actuó en el momento en que lo hizo. Y ese momento y no otro es el sujeto a investigación y decisión en este pleito.

■ Se levanta por último por la parte apelada en su alegato la siguiente cuestión:

''Hemos dicho y repetimos ahora que la cuestión se ha convertido en académica fundamentalmente. En esta acción la sentencia de esta Hon. Corte sólo puede abarcar dos extremos; ordenar la devolución de la propiedad o sea la restitución de la posesión, o que

el demandante pague el valor de la propiedad si no puede devolverla. Si la corte llegara a la conclusión de que el demandado tenía derecho a la posesión, siempre tendría que dar por sentado que la dueña del establecimiento era la corporación. Luego, si la propiedad ya no existe no podrá ser devuelta tampoco la posesión al demandado; y como él no es dueño, tampoco podrá ordenarse que se le pague su importe, el que, en todo caso, pertenece a la corporación, que ya lo tiene en su poder y ha dispuesto de él debidamente.

"Lo único que quedaría por resolver es quién tiene derecho a las costas, y para este fin únicamente es que la corte habrá de entrar a resolver si la corporación tenía derecho a la posesión y al establecimiento de este pleito, y si el demandado fué justamente destituído y por autoridad competente.

" 'Judgment for costs should be given defendant if entitled to possession at commencement of action, but when his right ceases pending action, he is not entitled to judgment for return of property.' 29 Cal. 312.  36 Cal. 110.  56 Cal. 458.  127 Cal. 653.''

No estamos conformes.  Es cierto que si las existencias todas del establecimiento fueron vendidas y el negocio mismo cesó, jamás podrán restablecerse las cosas al ser y estado que tenían el 10 de diciembre de 1925 en que la demanda fué interpuesta, pero ello no quiere decir que porque no pueda restablecerse ese estado, deje el tribunal de resolver la cuestión planteada.  De otro modo habría que reconocer la impotencia de la acción reparadora de la justicia en casos semejantes.  Y aunque la justicia que administran los tribunales como obra humana que es, es imperfecta, la tendencia de la ley y la jurisprudencia es a que sea lo menos imperfecta posible.

En casos como el presente, para la entrega inmediata de la propiedad al demandante se exige una fianza.  Si dictada sentencia declarando la demanda sin lugar, no puede la propiedad ser devuelta, surgirá la cuestión de si se causan o no con ello daños y perjuicios que podrá o no reclamar el perjudicado de acuerdo con los hechos y la ley.

*A virtud de todo lo expuesto opinamos que debe revocarse la sentencia apelada y dictarse otra declarando la demanda sin lugar, con costas.*