ANTONIO PACHECO, JR. ET AL., demandantes y recurridos, *v.* NATIONAL WESTERN LIFE INSURANCE COMPANY, demandada y peticionaria.

*Número:* CE-86-586        *Resuelto:* 30 de junio de 1988

---

56

58

*Jay A. García Gregory* y *José E. González Borgos*, de *Fiddler, González & Rodríguez*, abogados de la peticionaria; *Rina Biaggi García* y *Federico Lora López*, abogados de los recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El Tribunal de Distrito Federal para el Distrito de Puerto Rico, a tenor con lo dispuesto en la Regla 53.1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), nos certificó la pregunta siguiente:

¿Qué disposiciones sobre interrupción son las aplicables a reclamaciones instadas al amparo de la Ley Núm. 75 de 24 de junio de 1964, según enmendada, Ley sobre Contratos de Distribución, 10 L.P.R.A. sec. 278 *et seq.*: el Art. 941 del Código de Comercio, 10 L.P.R.A. sec. 1903, o el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303?

## I

*Hechos*

Los hechos que sirven de fundamento a la pregunta certificada son los siguientes. El 20 de noviembre de 1979 National Western Life Insurance Company (National Western), una corporación con oficinas principales en Tejas, dio por terminada la relación contractual con su representante en Puerto Rico, el demandante Antonio Pacheco. Al ser notificado de la terminación, el señor Pacheco inició reclamos extrajudiciales con National Western sobre beneficios y dinero que alegaba la aseguradora le adeudaba.(1) El 9 de septiembre de 1983 presentó demanda en el Tribunal Superior de Puerto Rico en la que reclamaba daños al amparo de la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq.*, que reglamenta la terminación de contratos de distribución. El 6 de octubre de 1983 el demandado National Western trasladó la acción al Tribunal de Distrito Federal para el Distrito de Puerto Rico y el 24 de febrero de 1986 presentó moción de desestimación alegando prescripción a tenor con lo dispuesto en el Art. 941 del Código de Comercio, 10 L.P.R.A. sec. 1903. El demandante se opuso. Alegó que eran de aplicación las disposiciones sobre interrupción del término prescriptivo por reclamaciones extrajudiciales del Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, y que, por lo tanto, la acción no estaba prescrita. Luego de varios trámites procesales, el Tribunal de Distrito federal certificó la pregunta que hoy nos ocupa.

## II

*Contrato de distribución*

El contrato de distribución es "una modalidad contractual nueva, atípica . . . . [S]e trata de un contrato de

---

(1) Alegato de la parte demandante.

naturaleza mercantil, rigiéndose, por consiguiente, por las normas [del] Código [de Comercio], por los usos de comercio observados generalmente en cada plaza —muy importante a los efectos que ahora interesan, por ser contrato gestado en la práctica comercial— y, finalmente, por las reglas del Derecho común". J. Latour Brotons, *Contrato y Subcontrato de Distribución,* 55 Rev. Der. Priv. 715 (1971). El contrato de distribución es mercantil por la naturaleza del mismo y por las partes involucradas.

En *Córdova & Simonpietri v. Crown American,* 112 D.P.R. 797, 803 (1982), consideramos como comprendida dentro de un contrato de distribución "la actividad mercantil del agente de seguros, en tanto en cuanto promueve y concluye contratos de seguro . . .". Interpretamos que la Ley Núm. 75, *supra,* cubre la relación entre un agente de seguros y su aseguradora al describir la misma como una actividad mercantil. Indicamos, además, que esta actividad la "constituye la prestación de un servicio mediante concesión o franquicia en el mercado de Puerto Rico bajo la Ley de Contratos de Distribución, *supra*". Íd.(2)

---

(2) Al hablar sobre el contrato de seguros y su naturaleza, Uría nos dice que:

"La naturaleza del contrato de seguro es la misma en el campo civil que en el mercantil. Lo que varía y distingue a un seguro de otro es el aspecto técnico de la operación. Mientras el seguro civil (hoy prácticamente inexistente) produce operaciones aisladas y esporádicas sin conexión entre sí, el seguro mercantil tiene como base económica inexcusable la reunión de un gran número de operaciones de la misma especie para poder llegar a neutralizar el riesgo, repartiéndolo sobre una masa de operaciones uniformes. Se ha dicho, con razón, que el seguro mercantil es cobertura mutua de múltiples economías individuales afectadas por los mismos riesgos, y que el asegurador se limita a enlazar esas economías, formando con la contribución de todas un fondo común de bienes que le permite hacer frente a cuantos siniestros se produzcan. Sólo montado sobre bases rigurosamente técnicas es capaz de ofrecer seguridad el seguro. Pero la base técnica requiere, a su vez, que el asegurador sea un empresario organizado para crear esa mutualidad de riesgos en que el seguro descansa. La industria aseguradora sólo puede ser realizada con garantía de éxito por empresarios especializados, aptos para organizar la explotación industrial conforme a un plan racional con el auxilio

# III

## Actos de comercio

■ Pasemos ahora a considerar la naturaleza de los actos que regula la Ley Núm. 75, *supra*. El Art. 2 del Código de Comercio, 10 L.P.R.A. sec. 1002, dispone que "[l]os actos de comercio, sean o no comerciantes los que los ejecuten, y estén o no especificados en este Código [de Comercio], se regirán por las disposiciones contenidas en . . . [y que s]erán reputados actos de comercio los comprendidos en este Código [de Comercio], y cualesquiera otros de naturaleza análoga".

■ La definición de lo que constituye un acto de comercio no ha sido tarea fácil para los comentaristas y tratadistas. Se han desarrollado teorías objetivas y subjetivas. El primero de estos enfoques gira alrededor del acto propiamente para determinar si éste es mercantil. El segundo clasifica el acto como mercantil o no tomando en consideración a las personas que lo llevan a cabo. J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed. rev., Madrid, Ed. Aguirre, 1976, Vol. I, págs. 138–139. Ninguna de estas teorías ha resultado

---

de métodos estadísticos y de finísimos cálculos matemáticos. La ciencia actuarial, nacida al calor de la institución aseguradora, es el mejor exponente de la base racional y matemática del seguro mercantil.

"Cuando nuestro artículo 380 dice que 'será mercantil el contrato de seguro si fuere comerciante el asegurador, y el contrato *a prima fija*; o sea cuando el asegurado satisfaga una cuota única o constante como precio o retribución del seguro', en el fondo de esa declaración late ya, con más o menos fuerza, la concepción del seguro como contrato de empresa, porque en la práctica sólo puede asumir el seguro a prima fija un asegurador organizado en esa forma; pero, además, otra serie de preceptos en los que nuestro Código habla de la 'compañía aseguradora' como titular de los derechos y obligaciones del contrato (arts. 421, 427, 431) son claro exponente de que nuestro legislador no pensaba en un seguro que pudiera existir en operaciones aisladas, realizadas esporádicamente, sino en el tráfico duradero y continuado propio de los empresarios aseguradores. R. Uría, *Derecho Mercantil*, 11ma ed., Madrid, Ed. Aguirre, 1976, págs. 559–560. Véase, también, J.M. Martínez Val, *Derecho Mercantil*, Barcelona, Ed. Bosch, 1979, págs. 529–532.

idónea para agrupar todas las posibles categorías de actos de comercio que existen. La serie de factores que conforman la actividad mercantil va más allá de las personas y el acto en sí. "La imposibilidad de arbitrar una fórmula única que, al abarcar todos los actos de comercio, permita diferenciarlos de los actos civiles y encerrarlos en los moldes de una definición, salta a la vista sólo con advertir que los factores que concurren a la formación de la *comercialidad* no son, exclusivamente, *la calidad de la persona y el objeto del acto.*" (Énfasis en el original.) A. Bérgamo Llabrés, *Instituciones de Derecho Mercantil*, Madrid, Ed. Reus, 1951, T. I, págs. 43–44. De otra parte, Garrigues nos advierte que "[e]s imposible abarcar en una enumeración la variedad incontenible de las relaciones económicas mercantiles. La lista de actos mercantiles [cerraría] . . . el paso a los Tribunales para la calificación mercantil de los nuevos hechos económicos que irrumpen a diario en el campo del tráfico comercial". Garrigues, *op. cit.*, págs. 144–145.

■ Reconociendo la necesidad de ampliar el concepto, los comentaristas también atribuyen carácter mercantil a los llamados actos de comercio por *relación.* Éstos son aquellos que, si son considerados aisladamente, resultan ser de naturaleza civil, "pero que al ponerse en contacto con un acto de comercio propio adquieren la naturaleza jurídica de éste; y es esta atracción venida de fuera, es esta relación la que determina su mercantibilidad. . . . Y THALLER . . . formula [esta 'teoría del accesorio'] en los siguientes términos: 'Todos los actos efectuados por un comerciante y relacionados con su explotación mercantil, participan de la comercialidad de los actos principales de la misma'". Bérgamo Llabrés, *op. cit.*, págs. 55–56.

■ La Ley Núm. 75, *supra*, fue creada con el propósito de reglamentar la terminación de las relaciones entre princi-

pales y distribuidores de productos y servicios en el mercado de Puerto Rico; una actividad relacionada con un acto de naturaleza típicamente mercantil: la explotación de un negocio mediante un contrato de distribución. 18 Diario de Sesiones de la Asamblea Legislativa, T. 4, pág. 1724 (1964); *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983). Aunque el acto en sí que regula la Ley Núm. 75, *supra,* no está contenido en el Código de Comercio, no cabe duda que éste es de naturaleza análoga a los allí regulados y, ciertamente, accesorio a la explotación mercantil del distribuidor.

## IV

*La interrupción del término prescriptivo de la Ley de Contratos de Distribución*

◼ La Ley sobre Contratos de Distribución establece que las acciones que se insten al amparo de la misma prescribirán a los tres (3) años, contados a partir de la fecha de terminación del contrato de distribución.[3] No reglamenta, sin embargo, la manera en que se puede interrumpir este término prescriptivo. Ante esta laguna, procede determinar qué preceptos relativos a la interrupción de la prescripción, a manera supletoria, son los aplicables. Sobre este particular encontramos que el Código Civil admite la interrupción de la prescripción por medio de una reclamación extrajudicial efectiva.[4] *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R.

---

[3] Art. 5 de la Ley Núm. 75 de 24 de junio de 1964 (10 L.P.R.A. sec 278d):
*"Prescripción de la acción*
"Toda acción derivada de este Capítulo prescribirá a los tres años a contar de la fecha de la terminación definitiva del contrato de distribución, o de la realización de los actos de menoscabo, según sea el caso." ˙

[4] Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303:
*"Interrupción de la prescripción*
"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

585 (1981); *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471 (1980). De otra parte, el Código de Comercio, al ser más restrictivo en cuanto a la manera de interrumpir los términos prescriptivos, no reconoce la reclamación extrajudicial de la acción como método para interrumpir la prescripción.(5)

Recientemente, en *Mortensen & Lange v. S.J. Mercantile Corp.*, 119 D.P.R. 345, 351 (1987), tuvimos la oportunidad de examinar la prescripción mercantil. Allí reconocimos que los preceptos del Código de Comercio que integran las disposiciones sobre prescripción "señalan plazos más cortos que los correlativos del Derecho Civil, [y que] 'no constituyen un conjunto sistemático y completo de normas que pueda considerarse como una doctrina general sobre prescripción mercantil, sino que son tan sólo normas aisladas [reguladoras] de supuestos especiales'. J. Garrigues, *Dictámenes de Derecho Mercantil*, Madrid, [Imp.] Aguirre, 1976, Vol. II, pág. 841". Véase J.M. Martínez Val, *Derecho Mercantil*, Barcelona, Ed. Bosch, 1979, pág. 448. También indicamos que "[e]n materia de prescripción mercantil, por ser estas normas de carácter preciso e imperativo [en ausencia de reglamentación específica], no se admite la formación de usos de comercio observados generalmente en cada plaza, según lo dispuesto en el Art. 2 del Código de Comercio, 10

---

(5) Art. 941 del Código de Comercio, 10 L.P.R.A. sec. 1903:

*"Interrupción de la prescripción*

"La prescripción se interrumpirá por la demanda u otro cualquier género de interpelación judicial hecho al deudor; por el reconocimiento de las obligaciones, o por la renovación del documento en que se funde el derecho del acreedor.

"Se considera la prescripción como no interrumpida por la interpelación judicial, si el actor desistiere de ella, o caducar la instancia, o fuese desestimada su demanda.

"Empezará a contarse nuevamente el término de la prescripción en caso de reconocimiento de las obligaciones, desde el día en que se haga; en el de su renovación, desde la fecha del nuevo título, y si en él se hubiere prorrogado el plazo del cumplimiento de la obligación, desde que éste hubiere vencido."

L.P.R.A. sec. 1002, con preferencia a las disposiciones del Código Civil sobre esta materia". *Mortensen & Lange v. S. J. Mercantile Corp.*, supra, pág. 351.

Cabe señalar que el principio de supletoriedad del derecho común, que en relación con los actos de comercio establece el Art. 2 del Código de Comercio, *supra*, significa que "antes de acudir al Código Civil, o en general a la legislación civil, deben agotarse las fuentes del derecho mercantil, o sea, la ley en primer lugar, su interpretación extensiva y analógica en segundo . . . y ello es así, porque de existir una norma derivada de cualquiera de estas fuentes, se trataría de una disposición especial que debe prevalecer sobre la general". (Escolio omitido.) J. Barrera Graf, *Tratado de Derecho Mercantil*, Méjico, Ed. Porrúa, 1957, Vol. I, pág. 15.

Al enfocar el problema de la interrupción de las acciones instadas al amparo de la Ley Núm. 75, *supra*, hay que tener presente que la extensión del concepto "acto mercantil" y lo que éste significa no se limita a definir el acto en sí, sino que también incluye las consecuencias jurídicas que se derivan del mismo. A estos efectos, Garrigues expresa que:

Acto ilícito es toda conducta de una persona que injustamente lesione la esfera jurídica de otra. La esfera jurídica ajena se lesiona tanto por quien estando ligado a otra en una obligación contractual no la cumple (hecho ilícito contractual), como por quien, fuera de todo vínculo obligatorio, viole el precepto general que prohíbe dañar a otro (hecho ilícito extracontractual).

*Cuando se trata de un hecho ilícito contractual, no hay duda que si era mercantil la obligación precedente, mercantil será la obligación (resarcimiento del daño) derivada de su violación.* La obligación contractual primitiva no se extingue, sino que se perpetúa, cambiando solamente su objeto; antes era la prestación, ahora es el resarcimiento. (Énfasis suplido.) Garrigues, *op. cit.*, pág. 146.

■ Cuando se incumple una obligación mercantil, como es la que emana de un contrato de distribución, el efecto jurídico creado por el incumplimiento, en el caso de autos el derecho a indemnización, continúa siendo mercantil por ser accesorio a un acto de comercio principal. "En cuanto a los actos que lesionan injustamente la esfera jurídica de otra persona (actos ilícitos), la moderna doctrina de la responsabilidad contractual entiende que cuando una obligación queda incumplida, lejos de extinguirse, se perpetúa, con una simple mutación del objeto: el resarcimiento sustituye a la prestación. *De ahí que cuando la obligación violada sea mercantil, este carácter debe pervivir en la obligación de resarcimiento nacida de la violación.*" (Énfasis suplido.) Bérgamo Llabrés, *op. cit.*, pág. 53. En consecuencia, al ser de carácter mercantil el cumplimiento del contrato de distribución, también lo es el deber de indemnizar a la parte perjudicada por la terminación sin justa causa del mismo. Ley Núm. 75, *supra.*

■ Las lagunas de la Ley Núm. 75, *supra*, sobre la interrupción del término prescriptivo que allí se establece deben ser subsanadas aplicando el Código de Comercio, una ley *in pari materia* que guarda gran coherencia con la naturaleza de la materia regulada por esta ley especial. E. Lalaguna Domínguez, *Aplicación del Código Civil como derecho supletorio de otras leyes,* 60 Rev. Der. Priv. 621 (1976). El Código de Comercio establece plazos prescriptivos cortos y una forma rigurosa de interrumpirlos. Al así hacerlo fomenta la diligencia y rapidez de las relaciones comerciales y logra agilizar el tráfico mercantil. Sólo permite la interrupción mediante la interposición de demanda judicial, el reconocimiento de la deuda por parte del deudor y la renovación del documento en que esté fundado el derecho del acreedor. Art. 941 del Código de Comercio, *supra.*

■ Tomando en consideración todo lo anteriormente expuesto, *resolvemos que por ser la Ley Núm. 75, supra, de carácter mercantil, que regula la terminación o menoscabo del contrato de distribución entre los principales y sus distribuidores, la acción indemnizatoria resultante es también de la misma naturaleza y, de forma supletoria, le son aplicables las disposiciones del Código de Comercio relativas a la interrupción de la prescripción. Las reclamaciones extrajudiciales no interrumpen el término prescriptivo de tres (3) años del Art. 5 de la Ley Núm. 75, supra, 10 L.P.R.A. sec. 278d.*

*Se dictará sentencia de conformidad con lo antes expresado.*

El Juez Asociado Señor Ortiz disiente sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.