Brau Ramírez, Juez Ponente
*703 TEXTO COMPLETO DE LA RESOLUCION
I
La corporación peticionaria G & G Sportswear Mfg. Co. ("G & G Sportswear") y los peticionarios individuales Jorge L. Claudio y José G. Barea recurren de una resolución emitida el 5 de septiembre de 1996 por el Tribunal de Primera Instancia, Sala Superior de Caguas, denegando dos mociones presentadas separadamente por dichas partes, en las que solicitaba la desestimación de la demanda por devolución de propiedad mueble, cobro de dinero y daños y perjuicios presentada ante el foro de Instancia contra los peticionarios por la parte recurrida, Taysir Samara, su esposa Milagros Cancel Montalvo y la Sociedad Legal de Bienes Gananciales compuesta por ambos. Denegamos.
n
Según se desprende del recurso, la peticionaria G & G Sportswear es una corporación organizada bajo las leyes del E.L.A. con oficinas en Caguas, dedicada a la manufactura de ropa deportiva y ropa para damas y niños. Los peticionarios Claudio y Barea Fernández son los directores y/o dueños de dicha corporación. Los esposos recurridos también son comerciantes, asociados al negocio de manufactura y/o venta de ropa.
El 10 de octubre de 1990, los recurridos presentaron una demanda contra G & G Sportswear ante el Tribunal de Primera Instancia. Alegaron que, un año antes, habían sostenido conversaciones con los directores de G & G Sportswear para organizar una sociedad que operaría de forma paralela a esta última. Los recurridos reclamaron que, en virtud de dichas negociaciones, habían cedido a la corporación peticionaria cierto equipo industrial, detallado en la demanda, de los comúnmente utilizados en la industria de la aguja, con un valor de $15,000. Se alegaba, además, que el recurrido Taysir Samara había prestado servicios como gerente de producción, vendedor y cobrador para la nueva empresa, en beneficio de la peticionaria y que las partes habían acordado que dichos servicios serían remunerados a razón de $300.00 semanales, más el 50% de las ganancias percibidas por la sociedad.
La demanda también alegaba que el contrato no se había llegado a perfeccionar debido a la actitud negativa de la parte peticionaria. No obstante, la peticionaria había retenido y usado el equipo cedido por el recurrido y se había beneficiado de las gestiones de este último, las cuales no habían sido compensadas. Los recurridos expresaron que interesaban recuperar la posesión del equipo.
Como remedios específicos, se solicitaba que se declarara que el recurrido era el titular de los bienes en cuestión, que se condenara a la peticionaria a pagar la suma de $4,200.00 a los recurridos por los servicios prestados por el Sr. Samara, así como la suma de $20,000.00, por ganancias dejadas de percibir y $10,000.00 por el uso y depreciación de los bienes.
G & G Sportswear contestó la demanda, negando las alegaciones. Presentó, además, una reconvención por la alegada apropiación por los recurridos de cierto inventario de ropa y muestrario, así como por daños y pérdidas ocasionadas por alegadas representaciones fraudulentas realizadas por el recurrido.
Posteriormente, el 1 de noviembre de 1993, los recurridos enmendaron su demanda para incluir como *704 co-demandados a los peticionarios en su calidad personal, haciendo extensivas a éstos las alegaciones originales.
Luego de otros incidentes, los peticionarios Claudio y Barea Fernández presentaron una Moción Solicitando Desestimación de la demanda, aduciendo que había sido la corporación G & G Sportswear la que había contratado y/o negociado con los recurridos, por lo que, bajo la Ley de Corporaciones de Puerto Rico, 14 L.P.R.A. secs. 1101 y ss., los peticionarios no tenían ninguna responsabilidad hacia los recurridos. Mediante resolución emitida el 23 de marzo de 1995, el Tribunal de Primera Instancia concedió un término a los recurridos para oponerse a la moción de los peticionarios.
El Tribunal advirtió a los recurridos que: "[transcurrido el término sin que se haya atendido la presente orden, se entenderá que se están allanando a que se dicte sentencia".
Los recurridos, sin embargo, no respondieron a la orden en el término indicado. El Tribunal tampoco tomó la acción intimada.
Así las cosas, en mayo de 1996, los peticionarios presentaron una nueva Moción Solicitando Desestimación al Amparo de la Regla 10.2(5) de las de Procedimiento Civil y reiterando Moción de Desestimación anterior. En la misma, los peticionarios invocaban ciertas contestaciones sometidas por los recurridos a un interrogatorio que habían enviado los peticionarios, en las que se aclaraba que el alegado contrato entre las partes había sido de naturaleza verbal. Los recurridos plantearon que, toda vez que se trataba de una obligación en exceso de $300.00, la misma no podía ser establecida mediante testimonio oral, conforme al art. 82 del Código de Comercio de Puerto Rico, 10 L.P.R.A. see. 1302, por lo que la reclamación de los recurridos no podía prevalecer. En cuanto a la solicitud de los recurridos de que se le devolvieran los equipos, la parte peticionaria alegó que dicha acción debía estar fundada en algún contrato. Finalmente, los peticionarios individuales se reafirmaron en su solicitud anterior de desestimación, basada en que les cobijaba el velo corporativo de G & G Sportswear.
Los recurridos se opusieron a la moción de desestimación de los peticionarios.
El 5 de septiembre de 1996, mediante la resolución recurrida, el Tribunal de Primera Instancia denegó la solicitud de los peticionarios. Insatisfechos, éstos acudieron ante este Tribunal.
ffl
En su recurso, los peticionarios plantean que erró el Tribunal de Primera Instancia al no desestimar la demanda contra los peticionarios individuales, a pesar de que las negociaciones alegadas en la demanda fueron conducidas con la corporación G & G Sportswear, quien goza de una personalidad jurídica distinta y separada a la de los otros peticionarios.
Aunque denominada una moción de desestimación, la solicitud de la parte peticionaria realmente constituía una moción de sentencia sumaria, puesto que la misma estaba apoyada por información no incluida en la demanda, proveniente de las contestaciones a interrogatorios sometidas por los recurridos. Véase, 32 L.P.R.A. Ap. Ill, R. 10.2. A tenor con la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, dicha moción resultaba procedente únicamente en ausencia de controversia real sustancial en torno a los hechos materiales del caso. Véase, Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 723 (1986).
El Tribunal Supremo de Puerto Rico ha establecido que sólo debe dictarse sentencia en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes. PFZ Properties v. General Accident Insurance Co., D.P.R. _ (1994), 94 J.T.S. 116, a la pág. 124; Rivera Santana v. Superior Packing, Inc., _ D.P.R. _ (1992), 92 J.T.S. 165, a la pág. 10,165. Cualquier duda debe ser adjudicada en contra del proponente de la moción. Véase, PFZ Properties v. General Accident Insurance Co., 94 J.T.S. 116, a la pág. 125.
En la situación de autos, la demanda de los reéurridos alegaba que los peticionarios habían ilegalmente retenido el equipo perteneciente a los recurrentes, a pesar de que las conversaciones entre las partes para *705 establecer un negocio habían concluido y que el recurrido realizó gestiones en beneficio de los peticionarios, sin recibir la correspondiente compensación. Opinamos que, a la luz de dichas alegaciones, el Tribunal de Primera Instancia no abusó de su discreción al negarse a desestimar el recurso. Existe, evidentemente, una controversia real sustancial entre las partes en tomo al carácter en el cual los peticionarios individuales participaron en dichas negociaciones.
Aunque es cierto que las corporaciones tienen una personalidad jurídica separada de sus accionistas, Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp., _ D.P.R. _ (1993), 93 J.T.S. 33, a las págs. 10, 86-87; Cruz v. Ramírez, 75 D.P.R. 947, 954 (1954), 14 L.P.R.A., see. 1106, si de una interpretación de las alegaciones de una demanda se desprende la posibilidad de que pueda imponerse responsabilidad individual a sus accionistas, por constituir dicho ente un "alter ego" de los primeros, recibiendo éstos exclusiva y personalmente todos los beneficios producidos por la gestión corporativa, entonces no procede la desestimación de la acción. Véase, Cruz v. Ramírez, supra, a la pág. 954.
En la situación de autos, no está claro de las alegaciones que quepa imputar a la Corporación G & G Sportswear, en vez de a sus accionistas, las negociaciones con los recurridos. No se ha planteado, por ejemplo, que G & G Sportswear hubiese adoptado las correspondientes resoluciones corporativas para asumir título propietario sobre el nuevo negocio o, incluso, que hubiese estado autorizada, por sus estatutos, a llevar a cabo este tipo de gestión.
En efecto, tal y como se las describe en el limitado récord que tenemos ante nos, las negociaciones entre las partes parecen haber tenido un carácter más bien informal. Ello impide descartar, en esta etapa temprana, la posibilidad de que el Tribunal de Primera Instancia impusiese una responsabilidad personal a los peticionarios individuales, de prevalecer la parte recurrida en su reclamación.
Aun si pudiese concluirse que las negociaciones entre las partes fueron efectivamente llevadas a cabo a nombre de la corporación, no estimamos que proceda la desestimación de la demanda. Debe recordarse, en este sentido, que la demanda solicita la devolución de los equipos alegadamente entregados por los recurridos. Toda vez que el récord no permite determinar si dichos equipos se encuentran en la posesión de los peticionarios individuales, en lugar de la corporación, no cabría desestimar la demanda contra dichas partes, quienes podrían resultar necesarias para la concesión de un remedio completo.
Los peticionarios individuales aducen que los recurridos "se allanaron" a la desestimación de la demanda en su contra, al no cumplir con la orden del Tribunal del 23 de marzo de 1995. El récord refleja que los recurridos sí presentaron una oposición a la solicitud de desestimación de los peticionarios individuales, si bien lo hicieron fuera del plazo concedido por el Tribunal. El Tribunal de Primera Instancia, quien emitió la directriz citada, no estimó que la tardanza de los recurridos debiera de ser considerada como una renuncia de sus planteamientos. No percibimos que dicho foro hubiera abusado de su discreción al así actuar.
Los peticionarios también plantean que la relación entre las partes era de naturaleza mercantil, por lo que resultaba necesario que el alegado contrato entre las partes fuese escrito, conforme al art. 82 del Código de Comercio, 10 L.P.R.A. see. 1302. Dicho precepto dispone, en lo pertinente, que:

"Serán válidos y producirán obligación y acción en juicio los contratos mercantiles, cualesquiera que sea su forma y el idioma en que se celebren, la clase a que correspondan y la cantidad que tengan por objeto, con tal que conste su existencia por alguno de los medios que el derecho civil tenga establecidos. Sin embargo, la declaración de testigos no será por sí sola bastante para probar la existencia de un contrato cuya cuantía exceda de trescientos dólares, a no concurrir con otra prueba."

El Tribunal Supremo de Puerto Rico ha establecido que el incumplimiento con este requisito de forma, en aquellos casos en que se pretenda reclamar por el incumplimiento de una obligación de naturaleza mercantil, impide a los tribunales conceder el remedio solicitado. Véase, Vilá & Hnos., Inc. v. Owens Ill. de P.R., 117 D.P.R. 825, 834 (1986).
*706 La parte peticionaria alega que, en el presente caso, el negocio proyectado entre las partes era asimilable a los contratos de comisión mercantil, bajo el art. 162 del Código de Comercio, 10 L.P.R.A. see. 1521 o de préstamo mercantil, bajo el art. 229 del mismo cuerpo legal, 10 L.P.R.A. see. 1651. El primero de estos preceptos establece que se reputará comisión mercantil el mandato, "cuando tenga por objeto un acto u operación de comercio y sea comerciante o agente mediador del comercio el comitente o el comisionista". El art. 229, por su parte, dispone que se reputará mercantil el préstamo, "cuando alguno de los contratantes sea comerciante y alguna de las cosas prestadas fuese destinada al comercio".
Los peticionarios señalan que las alegadas negociaciones en este caso fueron llevadas a cabo entre partes que se dedican al comercio y que el objeto de las prestaciones alegadas por los recurridos, viz, los equipos cedidos y las gestiones del recurrido, constituían actos de comercio y/o estaban destinadas a promover gestiones de comercio de la nueva empresa que se proyectaba establecer.
Coincidimos con el Tribunal de Primera Instancia, sin embargo, en que el récord en el presente caso resulta insuficiente para adjudicar, en esta etapa, la naturaleza civil o mercantil de las obligaciones reclamadas. Aunque no parece existir controversia en que las partes en el negocio eran comerciantes, no está claro que lo que se discutió entre ellos constituía, como tal, un contrato de préstamo o de comisión.
El Código de Comercio no define, como tal, lo que constituye un acto de Comercio. El art. 2 del Código de Comercio, 10 L.P.R.A. see. 1002, dispone meramente que:

"Los actos de comercio sean o no comerciantes los que los ejecuten, y estén o no especificados en este Código, se regirán por las disposiciones contenidas en él, y en su defecto, por los usos del comercio observados generalmente en cada plaza; y a falta de ambas reglas, por las del derecho común. Serán reputados actos de comercio los comprendidos en este Código, y cualesquiera otros de naturaleza análoga."

Se han desarrollado teorías subjetivas y objetivas para la identificación de los actos de comercio. El primero de estos enfoques gira alrededor del acto propiamente para determinar si éste es mercantil. El segundo clasifica el acto como mercantil o no tomando en consideración a las personas que lo llevan a cabo. Pacheco v. Nat'l Western Life Ins. Co., 122 D.P.R. 55, 61 (1988). Ninguna de estas teorías ha resultado idónea para agrupar todas las posibles categorías de actos de comercio que existen. Id. El Tribunal Supremo de Puerto Rico ha observado que "[n jo existe en nuestra tradición jurídica un concepto unitario de comercio. Los factores definitorios de la naturaleza, comercial o civil, de una transacción varían de caso a caso." Pescadería Rosas, Inc. v. Lozada, 116 D.P.R. 474, 479 (1985).
El mero hecho, por ejemplo, de que un acto sea realizado por un comerciante, no lo transforma en un acto de comercio. Reece Corp. v. Ariela, Inc., 122 D.P.R. 270, 280 (1988). Lo contrario implicaría calificar como "mercantil" todo acto en el que, independientemente de su naturaleza sustantiva, interviniesen dos comerciantes. Id.
Por otro lado, se ha resuelto que el hecho que se otorgue un préstamo con el fin de permitirle a una parte dedicarse a un negocio y que su producto se utilice para la compra de mercancías no convierte a dicho negocio en un préstamo mercantil, si las partes no se dedican habitualmente al comercio. Barceló & Cía, S. en C. v. Olmo, 48 D.P.R. 247, (1935); véase, además, Pescadería Rosas, Inc. v. Lozada, supra.
El hilo conductor, fuera de los requisitos particulares de cada negocio, parece ser más bien su finalidad, su conexión con el tráfico mercantil, su habitualidad, su atención al valor permutable de las cosas. Pescadería Rosas, Inc. v. Lozada, 116 D.P.R. a la pág. 479.
El peso de la prueba para establecer el carácter comercial de una obligación le corresponde a la parte que invoque la aplicabilidad del Código de Comercio. Reece Corp. v. Ariela, Inc., 122 D.P.R. a la pág. 280; Pescadería Rosas, Inc. v. Lozada, 116 D.P.R. a la pág. 481.
En la situación de autos, las alegaciones de la demanda ofrecen poca precisión en torno a la naturaleza del *707 negocio proyectado. Esta parquedad es permisible, bajo nuestro ordenamiento. Véase, la Regla 6.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 6.1; Cruz Cora v. UCB/Trans Union Puerto Rico Division, _ D.P.R. _ (1995), 95 J.T.S. 12, a la pág. 614. A la luz de la misma, resulta difícil llegar a una conclusión categórica en torno a la naturaleza del negocio.
Contrario a lo que sugieren los peticionarios, el hecho de que las partes hubieran entrado en conversaciones para el establecimiento de un negocio a ser dedicado a actividades comerciales, a nuestro juicio, no necesariamente imparte carácter mercantil a dichos acuerdos preliminares. Si así fuera todos los acuerdos para la incorporación de un negocio se reputarían mercantiles. Pero no está claro que este tipo de gestión, por sí sola, goce de la habitualidad, dependa del valor permutable de las cosas o guarde una conexión suficiente con el tráfico mercantil. Pescadería Rosas, Inc. v. Lozada, supra. En ausencia de algún acto específico de comercio, no pensamos que cabría imputar carácter mercantil a las negociaciones en la situación de autos. Compárese, Vilá & Hnos., Inc. v. Owens Ill. de P.R. 117 D.P.R. a la pág. 831 (negociaciones envolvían contrato de suministro).
En cualquier caso, cabe señalar que, según se alegó en la demanda, las partes no llegaron a-perfeccionar ningún contrato específico, sino que los recurridos reclaman más bien por el beneficio derivado de sus gestiones por los peticionarios. Estas alegaciones parecerían enmarcables dentro de figura del cuasicontrato, 31 L.P.R.A. sees. 5091 y ss., o de la culpa in contrahendo; véase, Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982). No está claro, de este modo, que el requisito de forma exigido por el art. 82 del Código de Comercio sea aplicable a esta situación, puesto que no se alega, como tal, la existencia de ningún contrato, mercantil o civil.
Concluimos que no erró el Tribunal de Primera Instancia al denegar la moción de desestimación de los peticionarios por este fundamento.
Los peticionarios también alegan que los recurridos carecen de causa de acción para solicitar la devolución de los equipos, en ausencia de una relación contractual. Un examen de la jurisprudencia citada en apoyo de dicha contención, sin embargo, revela que se trata de situaciones en que la parte demandante no consiguió establecer su título sobre los bienes reclamados. Véanse, Ron Carioca v. Miller, 64 D.P.R. 1 (1944); The Lawyers' Cooperative Publishing Co. v. Lastra, 47 D.P.R. 419 (1934); Cortés & Segura, Inc. v. Cortés, 40 D.P.R. 547 (1930).
El art. 280 del Código Civil, 31 L.P.R.A. sec. lili, de otro modo, reconoce a todo propietario el derecho de reivindicar sus bienes; véase, Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94, 99 (1986). El art. 1795 de dicho Código, 31 L.P.R.A. see. 5121, también permite que se reclame la restitución de las cosas recibidas indebidamente. Ambas disposiciones parecerían justificar la pretensión de la parte recurrida en este caso, de conseguir dicha parte probar sus alegaciones. Tampoco se cometió este error.
Por los fundamentos expresados, se deniega el auto solicitado.
Lo pronunció el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General