# 99 DTA 168

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO
PANEL II**

ROYAL BANK DE PUERTO RICO
Demandante-Apelado

v.

AUTO CHEVROLET, INC., ET AL.
Demandados

RONALD J. WIRSHING
Demandado-Apelante

Núm. KLAN-97-00823

San Juan, Puerto Rico, a 17 de mayo de 1999

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ronald J. Wirshing nos solicita que revoquemos una sentencia emitida el 22 de abril de 1997 por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante ésta, dicho foro declaró *"con lugar"* una acción de cobro de dinero incoada por el Royal Bank of Puerto Rico. Luego de ponderar las circunstancias del caso, así como el derecho aplicable, resolvemos que el foro inferior actuó correctamente, por lo que procede confirmar el dictamen impugnado.

### I

El 12 de abril de 1991, el Royal Bank de Puerto Rico *("Royal Bank" o "Banco"),* como sucesor del Banco de San Juan, instó una acción en cobro de dinero contra Auto Chevrolet, Inc. *("Auto Chevrolet"),* Luis A. Nazario Negrón, Ronald J. Wirshing, y la sucesión de Enrique Petrovich Boscio. En la misma alegó que Auto Chevrolet le adeudaba por concepto de préstamo $52,501.00, intereses acumulados y una cantidad pactada de $10,000.00 para gastos, costas y honorarios de abogado. En cuanto a los demás demandados alegó que responden solidariamente toda vez que se obligaron personalmente a pagar hasta $200,000.00 de toda deuda que Auto Chevrolet tuviese con el Banco de San Juan, sus sucesores o cesionarios. Acreditó estas alegaciones mediante cuatro pagarés y una carta de garantía.

El 19 de marzo de 1992, Wirshing solicitó la desestimación de la acción instada en su contra. Como fundamento adujo que se trata de una obligación mercantil y que los demandantes presentaron la demanda luego de expirado el término prescriptivo de tres (3) años dispuesto para dicha acción en el Código de Comercio. Luego de atender ambas posiciones, el Tribunal de Instancia (Hon. Francisco J. Viera Cruz, J), dictó sentencia parcial decretando la desestimación solicitada. Posteriormente, el 24 de febrero de 1993, el Tribunal (Hon. Miguel A. Montalvo Rosario, J.), emitió una resolución dejando sin efecto dicha sentencia parcial.

El 18 de diciembre de 1993, el Royal Bank de Puerto Rico solicitó que se le sustituyera como parte demandante. Indicó que debido a que había vendido parte de sus activos al Banco Bilbao Vizcaya procedía enmendar el epígrafe, de forma que la institución matriz, el Royal Bank of Canada, figurara como demandante. La parte demandada se opuso. En la vista efectuada el 17 de junio de 1994 el Tribunal inferior instruyó a las partes a reunirse e intentar llegar a un acuerdo en cuanto a la sustitución de parte solicitada.

El 2 de octubre de 1994, las partes sometieron un escrito en el que informaron haber llegado a un acuerdo, condicionado a que el Tribunal resolviera si un documento suscrito el 19 de mayo de 1989 entre el Banco y Roberto Bacó constituyó una novación de la obligación reclamada. En virtud de dicho acuerdo,

1. El demandante, y con la conformidad de los abogados de la parte adversa, quienes suscriben, enmienda su alegación-demanda del modo siguiente: El demandante se entenderá no el inicial Royal Bank de Puerto Rico, sino el sustituyente ROYAL BANK OF CANADA, a los efectos de los remedios que reclama.

2. El demandante retira su reclamación contra los demandados representados por el Lcdo. Félix A. Toro, Jr., la viuda e hijos del causante Enrique Petrovich Boscio, si éste firma este escrito en señal de aceptación y porque el demandante acepta que repudiaron la herencia de su ex-cónyuge y padre causante, en tiempo y forma.

3. El demandante retira su reclamación contra la demandada del epígrafe, Doña Gelly M. Ortiz de Nazario y sociedad legal de gananciales compuesta con Luis A. Nazario Negrón, según demandados y porque Doña Gelly M. Ortiz de Nazario no suscribió la garantía colateral que sí suscribió Don Luis A. Nazario Negrón, su esposo expresado.

4. El demandante, igual que con la anterior demandada, retira asimismo [sic] la reclamación-demanda contra

Mary Doe, la esposa del demandado, según epígrafe y, por ende, contra la sociedad de gananciales que mantiene con el dicho demandado, Don Ronald J. Wirshing [sic] y según demandados.

Sentencia apelada, págs. 9-10, Apéndice del Recurso, págs. 10-11. Así, el 1 de diciembre de 1994, se decretó el archivo con perjuicio de las reclamaciones contra la esposa de Wirshing y la sociedad legal de gananciales compuesta por ellos, la esposa de Nazario Negrón y la sociedad legal de bienes gananciales compuesta por ambos, así como de las acciones contra la viuda y la sucesión de Petrovich Boscio.

De otra parte, mediante resolución de 21 de marzo de 1995, el foro de instancia determinó que el documento suscrito entre el Banco y Bacó no constituyó una novación de la obligación. Inconformes, los demandados presentaron una petición de *certiorari* ante este Tribunal. Mediante resolución de 16 de noviembre de 1995, se denegó la expedición del recurso.

Luego de varios trámites procesales, el juicio en su fondo se realizó durante los días 8 y 9 de febrero de 1996. Finalizado el desfile de prueba, el tribunal ordenó a las partes someter memorandos de derecho en apoyo de sus respectivas posiciones. Las partes coincidieron en que las controversias a resolver se limitaban a si el Royal Bank tenía derecho a reclamar la acreencia objeto del pleito y, de tener tal derecho, si la acción estaba o no prescrita. Así las cosas, el Tribunal *a quo* (Hon. Leida González Degró, J.), emitió el dictamen aquí impugnado. En el mismo determinó que el Banco tiene derecho a reclamar la acreencia, así como que la acción fue interpuesta oportunamente y, por tanto, no está prescrita. A tenor, condenó a los co-demandados Auto Chevrolet, Wirshing y Nazario Negrón a pagar solidariamente al Banco $48,142.41 por concepto de principal, los intereses acumulados, más $2,500.00 para honorarios de abogado. Este dictamen fue archivado en autos y notificado a las partes el 10 de junio de 1997. Wirshing solicitó tanto determinaciones de hecho adicionales como la reconsideración del dictamen. Ambas peticiones fueron declaradas *"no ha lugar"*.

Con este trasfondo procesal e inconforme, acude nuevamente ante nos Wirshing, mediante la oportuna interposición del presente recurso de apelación. En el mismo sostiene que incidió el foro de instancia al concluir que Royal Bank tiene derecho a cobrar el importe de la deuda, a pesar de que el pagaré no fue endosado a su favor, así como al *"... no reconocer que trata este caso sobre la garantía de una obligación mercantil de tres (3) años establecido por el Código de Comercio de Puerto Rico y que la reclamación fue instada luego de transcurrir dicho término...".* Escrito del Recurso, a la pág. 8. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

En el presente caso no existe contienda acerca del derecho que tenía el Banco de San Juan para exigir el cumplimiento de la obligación. La discrepancia surge en cuanto a la legitimación o derecho del Royal Bank para reclamar la acreencia. El apelante arguye que por tratarse de un pagaré a la orden no endosado, el Banco no es tenedor del mismo y, por tanto, no puede, a tenor con el artículo 404 del Código de Comercio, 19 L.P.R.A. sec. 91, ejercer ninguna acción fundada en el mismo. Tal contención carece de mérito.

Es sabido que los documentos pagaderos se negocian al traspasarse de una persona a otra, de forma que el cesionario se convierte en tenedor del mismo. Artículo 383 del Código de Comercio, *Id.* sec. 61. Un pagaré a la orden queda negociado con el endoso del tenedor, y completado con la entrega. En cambio, la transferencia onerosa de un pagaré a la orden sin endoso equivale a una cesión del crédito, teniendo el cesionario los mismos derechos que el cedente. *Silva v. D.G.S.T. Two, Inc.,* 113 D.P.R. 747, 749 (1983). Al respecto se ha señalado que:

*"La entrega de un documento pagadero a la orden sin endoso resulta en una mera cesión de crédito ... La importancia de distinguir entre la negociación y la cesión es obvia. Cuando se produce una negociación no*

*solamente se transmite el título de la propiedad del documento, sino que también el recipiente del documento puede recibir un derecho autónomo que puede ser hasta superior al derecho del trasmitente. La cesión, en cambio, sólo trasmite el derecho del cedente."*

*Id.*, citando a B. Santiago Romero, *Tratado de Instrumentos Negociables,* 2da ed. rev., Puerto Rico, Ed. Universitaria, 1981, pág. 136.

Atendidas las circunstancias del caso de autos a la luz de la normativa antes reseñada, no hay duda de que el Royal Bank, como cesionario del crédito del Banco de San Juan, tiene derecho a reclamar el pago de la deuda. De esta forma, resulta irrelevante si el pagaré estaba o no endosado a su favor, ya que la mera transferencia del mismo facultó al Banco a exigir su cumplimiento. Así pues, es menester concluir que el Tribunal de Instancia actuó correctamente al determinar que el Royal Bank tenía derecho a reclamar el cumplimiento de la obligación prestataria.

### III

Arguye el apelante que el foro sentenciador erró al no reconocer que la obligación objeto del pleito es de naturaleza mercantil con un término prescriptivo de tres (3) años. Una lectura desapasionada de la sentencia impugnada revela que esta contención es claramente incorrecta. El Tribunal expresamente concluyó que el préstamo efectuado entre el banco de San Juan y Auto Chevrolet es mercantil y como tal tiene un término prescriptivo de tres (3) años. Véase la Sentencia apelada, págs. 10-13, Apéndice del Recurso, págs. 11-14.

Wirshing sostiene, además, que incidió el Tribunal de Instancia al concluir que la acción fue instada oportunamente. Tampoco le asiste la razón.

De acuerdo con el artículo 941 del Código de Comercio, 10 L.P.R.A. sec. 1903, el término prescriptivo de la acción mercantil sólo puede interrumpirse mediante la interposición de una reclamación judicial, el reconocimiento por parte del deudor de la deuda y la renovación del documento en que se funde el derecho del acreedor. Véase, además, *Pacheco v. National Western Life Ins. Co.,* 122 D.P.R. 55, 66 (1988).

Ahora bien, debido a que el Código de Comercio nada dispone en cuanto a la prescripción de las obligaciones solidarias, es necesario acudir de forma supletoria a las disposiciones pertinentes del Código Civil. Al respecto, el artículo 1874 de dicho cuerpo, 31 L.P.R.A. sec. 5304, establece que *"[l]a interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores."*

El término prescriptivo de la acción que nos ocupa -por tratarse de un documento pagadero a la presentación-comenzará a decursar en la fecha en que el mismo fue presentado para cobro. *Sucn. Rodríguez v. Virella,* 62 D.P. R. 651, 653 (1943).

En el caso de autos los pagarés fueron suscritos el 17 y 23 de septiembre y el 9 de octubre de 1980. Fueron presentados para cobro el 30 de marzo de 1983. Auto Chevrolet realizó los pagos desde el 30 de agosto de 1983 hasta el 20 de agosto de 1986. Posteriormente, el 19 de marzo de 1989, uno de los garantizadores solidarios, Roberto Bacó, suscribió un acuerdo con el Royal Bank comprometiéndose a satisfacer la deuda de Auto Chevrolet en caso de que el Banco no pudiera recobrar el pago del deudor principal o los demás garantizadores.

Los eventos reseñados denotan que la acción del presente pleito fue oportunamente instada. El término prescriptivo de la acción comenzó a decursar el día en que los pagarés se presentaron reclamando el pago -el 30 de marzo de 1983-. El pago de la deuda efectuado por Auto Chevrolet fue un reconocimiento de la deuda que redundó en la interrupción del término prescriptivo. De esta forma, dicho término comenzó a correr nuevamente

a partir del último pago efectuado por el Banco, es decir, el 20 de agosto de 1986. De igual forma, el acuerdo efectuado el 19 de mayo de 1989 entre Bacó y el Banco constituyó un reconocimiento de la deuda e interrumpió el término prescriptivo. Estas interrupciones afectaron tanto a los deudores que las realizaron como a los demás deudores solidarios. De esta forma, el Banco tenía hasta el 19 de mayo de 1992, fecha en que expiraba el término prescriptivo, para la acción exigiendo el pago de la deuda contra cualquiera de los deudores solidarios. Como señalamos anteriormente, dicha acción fue incoada el 12 de abril de 1991. Esto es, trece (13) meses antes de que el término expirara.

**IV**

Por los fundamentos antes expuestos, se confirma la sentencia emitida el 22 de abril de 1997 por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General